### EVANS *v.* SPRECKELS.

*(District Court, E. D. Pennsylvania.   January 9, 1891.)*

SHIPPING—CARRIAGE OF GOODS—DAMAGES—PERILS OF THE SEA.

    A part of a cargo of sugar was damaged by water, during a tempestuous voyage in which the vessel passed through severe storms accompanied by heavy rains, and was much strained and her seams opened. The greater part of the damage was by fresh water. *Held,* as the rain-storms and the condition to which the vessel was reduced would amply account for the presence of fresh water in the cargo, in the absence of satisfactory proof that the damage therefrom arose from other causes, it should be attributed to "peril of the sea."

Libel by Evans, master of the steam-ship Mineola, against Claus Spreckels.

*Curtis Tilton,* for libelant.

*Frank P. Prichard,* for respondent.

BUTLER, J. The libelant sues for a balance of freight; and the respondent sets up in defense a claim for damages to cargo. The only question arises out of this claim. A part of the cargo was seriously damaged. The charter exempts damages arising from "perils of the sea." The voyage was tempestuous and perilous; storms of wind and rain were encountered, of extraordinary violence; the deck was at times washed by waves and at others covered by rain-water; the swaying masts and rough sea strained the ship and, temporarily, opened seams through which water entered copiously. The damage arising from this source was unavoidable, and no blame attaches to the ship in consequence.

All damage to the cargo arose from water. According to the testimony of Mr. Wachtel, the respondent's chemist, a part of the damage was caused by salt water and a larger part by fresh. As respects that arising from the former there is no doubt that it is attributable to "perils of the sea." In the absence of satisfactory proof that the damage from fresh water should be attributed to a different source, the same conclusion will apply to it. The entrance of this water, (without such proof,) would be accounted for by the facts stated. I do not find any satisfactory evidence that water entered except through the temporary openings caused by storms. The testimony of Mr. Douglas, a witness called by the libelant, is that he found a "square wooden box or pipe, leading from what he supposed to be the master's cabin," and that it seemed to have leaked, or rather that "there was evidence of water having come through," etc. The witness did not see the water come through, nor test the pipe, nor ask to have it tested, so as to ascertain whether water would come through. This testimony consists of inferences merely; and these inferences,—which I think would not be fully satisfactory, even if we had nothing more,—seem to be completely repelled by the testimony of the master who says, on cross-examination, that the water-tanks are constructed of iron; that they were in sound and perfect condition; have not been repaired since; that he twice tested them subsequently to landing this cargo; and that the ship has recently carried sugar and flour safely. I must infer that this testimony applies to the pipes connected with the tank and all other of its fixtures, or attachments. As the respondent was seeking for evidence to support the testimony of Mr. Wachtel, who had been sent to look for leaks, and was to be called to prove a leak in the sink-pipe, it must be supposed he would have directed the master's attention specifically to the pipe if he did not understand the answers to embrace it. As the respondent's case had not then been developed, the libelant could not anticipate Mr. Wachtel's testimony, and therefore could not be expected to examine the master and others on the subject. Before the testimony of Mr. Wachtel was taken the master and crew, I am informed, had sailed. Besides, it does not appear that the injured sugar was in that part of the vessel. I am not unmindful of the fact that when the sea and rain water entered together, traces of salt would probably be found in all the sugar wet by it. Nevertheless if the fresh water was greatly in excess, the existence of salt in the sugar might not be detected by the test applied. It is quite probable, however, and indeed I think certain, that much fresh water entered when the waves were not washing the deck. Rain fell for many days, in great quantities,—sometimes flooding the deck, as the witnesses describe; and although it passed down through the seams produced by the storms, some, doubtless, passed down where no sea-water had gone; and even where the sea-water entered it is probable a much larger amount of rain-water went in, not only with it, but at times when the deck was not washed by waves, and consequently sank deeper, and spread wider, leaving no perceptible traces of salt. A decree must therefore be entered in the libelant's favor for the value of the freight claimed.